Robert B. REICH,* Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,

v.

LOCAL 399, INTERNATIONAL BROTH-ERHOOD OF ELECTRICAL WORK-ERS, AFL–CIO, CLC, Defendant–Appel-lee.

No. 92–2705.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1993.

Decided Aug. 16, 1993.

Helene Boetticher, Shireen M. Dosky (ar-gued), Brian William Dougherty, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for plaintiff-appellant.

Timothy A. Bridge, Michael J. Foley, Lo-rence Harley Slutzky (argued), Robbins, Schwartz, Nicholas, Lifton & Taylor, Chica-go, IL, Timothy J. Reardon, Robbins, Schwartz, Nicholas, Lifton & Taylor, Spring-field, IL, for defendant-appellee.

* During the pendency of this case, The Honorable Robert B. Reich succeeded The Honorable Lynn Martin as Secretary of Labor. Secretary Reich has been substituted for his predecessor pursuant to Federal Rule of Appellate Procedure 43(c)(1).

Before COFFEY and RIPPLE, Circuit Judges, and RONEY, Senior Circuit Judge.**

RIPPLE, Circuit Judge.

This is an appeal by the Secretary of Labor ("the Secretary") from a summary judgment order entered in favor of defendant, Local 399, International Brotherhood of Electrical Workers, AFL–CIO, CLC ("the Union"). The Secretary seeks to set aside the Union's election of officers on the ground that incumbent officers had denied other candidates the opportunity to mail campaign literature to eligible voters before ballots were mailed. *See* § 401(c) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA" or "the Act"), 29 U.S.C. § 481(c) (1988). In granting summary judgment in the Union's favor, the district court held that the complainants' filing of their administrative complaint with the Secretary, more than one month after a final decision by the Union, was untimely under § 402(a) of the Act, 29 U.S.C. § 482(a) (1988). For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings.

## I

## BACKGROUND

On May 8, 1991, the Union mailed ballots for its 1991 mail ballot election. The voting was to conclude on June 10, 1991. This ballot mailing took place without notice to non-incumbent candidates. The Secretary filed this lawsuit alleging that the Union had not complied with the requirement in § 401(c) of the Act, 29 U.S.C. § 481(c), that the Union provide sufficient safeguards to ensure a fair election. The premature mailing allegedly deprived the non-incumbents of their right to mail campaign literature to eligible voters before the ballots were mailed.

On May 11, 1991, James Elmore, an attorney representing the non-incumbents, sent a seven-page letter to the International Vice–

President of the Union (IVP). The letter detailed alleged violations of the Union constitution that resulted from the premature mailing of ballots. Formal charges were filed with the IVP on May 13, 1991, prior to the election. The provisions of the Union constitution governing the Union's protest procedures do not establish specific procedures for protesting officer elections. The complainants, Mark Corcoran, Richard Karun, and George Turley, therefore filed a pre-election protest in accordance with the sections of the constitution, which set forth general procedures for filing charges against any member, officer, or representative of the local Union. The three complainants initiated their protest by sending a written, signed, and notarized charge against the incumbent officers of the Union to the IVP. Rather than reiterating the allegations contained in their attorney's seven-page May 11 letter, the charge stated that the complainants were bringing charges

> on the basis of the allegations and assertions contained in the May 11, 1991 letter of Attorney James E. Elmore and incorporate by reference said attorney's letter and Exhibits as our Charge as if fully set forth herein.

R. 14, Ex. B. The parties agree that this May 13 letter was the complainants' formal charge. Article XXVII, section 3 of the Union's constitution provides:

> All charges against a member or members must be presented in writing, signed by the charging party, and specify the section or sections of this Constitution, the bylaws, rules or working agreement allegedly violated. The charges must state the act or acts considered to be in violation, including relevant dates or places.[1]

The attorney's May 11 letter fully satisfied section 3's specificity requirements, but not the signature requirement. No provision in the Union constitution expressly precludes incorporation by reference.

The IVP dismissed the complainants' charge in a letter dated May 20, 1991. The

---

** The Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, is sitting by designation.

1. This section deals with charges against members; section 8 containing parallel requirements, deals with charges against officers and representatives.

letter cryptically based the dismissal on the complainants' failure "TO COMPLY WITH THE INTERNATIONAL CONSTITUTION, ARTICLE XXVII, SECTION 3." R. 14, Ex. C. The IVP's letter did not explain how the complainants had failed to comply with the cited section of the constitution, nor did it imply that the charge was dismissed because there was any prohibition against incorporation by reference in a formal charge. The IVP's letter further indicated that he had regarded the attorney's letter containing the allegations as part of the May 13 charge: "On May 13, 1991, you sent this office through Attorney James Elmore a letter containing certain exhibits in which you allege the following individuals ... violated the International Constitution and/or the Local Union's Bylaws." *Id.* The IVP's letter also stated that "[i]t is not the practice or policy of [the IVP's] office to reply to charges filed by attorneys; however, as a courtesy to each of you, I am advising you of my disposition of such allegations and charges." *Id.* The IVP further noted that he had "carefully reviewed the documents ... submitted through Attorney Elmore." *Id.*[2] The IVP's letter then formally dismissed the charge for noncompliance with article XXVII, section 3. In sum, the IVP's letter dismissed the charge for noncompliance with an unspecified requirement in article XXVII, section 3 of the Union constitution, but the letter also implied

that the attorney's letter had been treated as part of the May 13 charge. The IVP's letter did not instruct the complainants that it was necessary to take any further action to preserve their right to appeal. The entire body of the letter is set out in the margin.[3]

On June 10, 1991, immediately after the election, the complainants sent a written appeal of the IVP's denial to J.J. Barry, the Union's International President (IP). In the appeal, the complainants expressed their confusion regarding the IVP's ambiguous assertion that the formal charge failed to comply with the requirements of article XXVII, section 3, of the Union constitution. The complainants recited that they believed their charge complied with each requirement set forth in section 3. Their appeal letter also stated that the IVP "disingenuously fail[ed] to identify with specificity the manner in which [their] charges [did] not comply with Article XXVII, Section 3." R. 14, Ex. H at 2. The complainants asserted that "[o]nly obfuscation is served by [the IVP's] cryptic ruling" and requested a "proper ruling" from the IP. *Id.*

Forty-six days later, in a letter dated July 26, 1991, the IP denied the complainants' appeal. The IP's letter, like the IVP's letter, merely declared that the complainants' charge did not meet the requirements of

---

2. At oral argument, the Union's attorney stated that the Union's bylaws prohibited members from being represented by an attorney when filing a charge against a Union official. Thus, counsel suggested that the initial involvement of the complainants' counsel in this matter could have provided an independent basis for precluding incorporation of attorney Elmore's letter into the complainants' charge. We cannot accept this suggestion. Nothing in the record indicates that this alleged bar against receiving legal advice was the basis for the complainants' lack of success in pursuing Union remedies. Indeed the IVP's ruling expressly states that he "carefully reviewed" all of the documents submitted by the complainants' attorney when ruling on the charges filed against the Union. Thus, the IVP clearly conceded that he had considered the detailed allegations contained in attorney Elmore's letter and incorporated into the complainants' charge.

3. Dear Brothers:

It is not the practice or policy of this office to reply to charges filed by attorneys; however, as a courtesy to each of you, I am advising you of my disposition of such allegations and charges.

On May 13, 1991 you sent this office through Attorney James Elmore a letter containing certain exhibits in which you allege the following named individuals, Paul B. Jones, James L. Hancock, Mary Jane Jones, Kathryn M. Bierbaum and George Lane allegedly violated the International Constitution and/or the Local Union's Bylaws.

I have carefully reviewed the documents you have submitted through Attorney Elmore, and conclude as follows:

"YOU HAVE FAILED TO COMPLY WITH THE INTERNATIONAL CONSTITUTION, ARTICLE XXVII, SECTION 3, AND I AM THEREFORE DISMISSING YOUR COMPLAINTS."

Fraternally yours,
James P. Conway
Int'l. Vice President
Sixth District, IBEW

article XXVII, section 3, of the Union constitution. The IP quoted the provision, noted that the complainants had not satisfied its requirements, and stated that the complainants' failure to refile a sufficient charge resulted in forfeiture of any further right to appeal. The IP neither specified how the complainants' charge had fallen short of the Union constitution's requirements nor referred to any provision in the Union constitution that authorized him to declare a forfeiture of appeal rights.[4]

The IP neglected to identify any portion of the IVP's decision with which the complainants failed to comply. The IP appeared to view the complainants' alleged default justifying forfeiture of their right to further appeals as a violation of some *implicit* requirement contained in the IVP's decision. The IP noted that it appeared elementary to him that the complainants should have corrected the deficiency in the charge by refiling it. This suggestion that refiling would have remedied the as yet unspecified deficiency was not only ambiguous but also belated; the complainants had sixty days from the time they first became aware of the alleged violations to file a sufficient charge. This sixty-day period expired on July 5, 1991. By waiting until July 26, 1991, to rule on the appeal, the IP effectively had prevented the complainants from timely refiling a formal charge.

The Union constitution provides that a party has two additional levels of appeal after an adverse decision by the IP. First, one may appeal to the International Executive Council (IEC) within thirty days of the IP's ruling. Thereafter, one may appeal an adverse ruling from the IEC to the International Convention (IC) within thirty days of the IEC's decision. Presuming that the IP's July 26 decision was appealable, as the complainants assert, they had until August 26, 1991, to file an appeal with the IEC. Instead of further exhausting their right to appeal within the Union, however, the complainants opted to file a complaint with the Secretary

on September 6, 1991. The Secretary then brought this action to invalidate the Union's 1991 mail ballot election for all contested offices and to require a new election for those offices under the Secretary's supervision.

In a motion to dismiss, which was converted to a summary judgment motion when the district court considered evidence beyond the pleadings, the Union contended that the complaint filed with the Secretary was untimely under the Act. Section 402(a) of the Act contains two subsections with alternative provisions for determining the time-frame within which a complaint must be filed with the Secretary. The Union asserted that § 402(a)(1) obliged the complainants to file with the Secretary within a month of the IP's July 26, 1991 decision. In response, the Secretary asserted that the timeframe set forth in § 402(a)(1) for filing a complaint with the Secretary did not apply. Rather, the Secretary submitted that the time period set forth in § 402(a)(2), which had been invoked specifically in the Secretary's complaint, should control. The Secretary maintained that the complainants' filing was timely under § 402(a)(2) because, although they still had unexhausted appellate rights within the Union, the complainants had invoked Union remedies for three calendar months without obtaining a final decision, a time period that expired on August 13, 1991. Under this view, the complainants were then obligated to file with the Secretary by September 13, 1991; they satisfied this statutory prerequisite by filing their complaint on September 6, 1991.

In its grant of summary judgment for the Union, the district court did not resolve the dispute concerning which subsection of § 402(a) applied. Instead, the court adopted the Union's position and held that the IP's July 26, 1991 letter was an unappealable final decision. The district court stated that, upon receiving the IVP's letter alleging that the charge did not comply with the section 3 requirements, the complainants "should have

---

4. Section 15 of article XXVII, which governs *waiver* of appeal rights, provides:

    Sec. 15. No appeals from decisions of the I.V.P. or from the I.P. or from the I.E.C. shall be recognized unless the party or parties ap-

pealing have complied with the decision from which they have appealed. However, this section may be waived by the party making the decision if good and sufficient reasons are furnished and he is requested to do so.

read § 3 and compared its requirements" with their original charge. R.16 at 4. The district court's order did not mention that the complainants' appeal to the IP had included just such a comparison with the requirements set forth in section 3. The district court also declared that "[a]lthough Complainants believe that they have complied with the *spirit* of section 3 by incorporating by reference the document from Attorney Elmore to their signed statement, they did not comply with the *letter*." *Id.* (emphasis in the original).

## II

## ANALYSIS

We now turn to the merits. We shall first focus on the governing statute. Then, in the succeeding sections, we shall assess, in light of that statute, the analysis of the district court and the position of the appellants.

Section 402(a) of the Act provides in pertinent part:

A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and by-laws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month. . . .

29 U.S.C. § 482(a).

In essence, this subsection establishes two procedural requirements that must be satisfied before the Secretary may file a complaint in the district court. First, the complainants must have either fully exhausted all remedies available under the Union constitution and bylaws, 29 U.S.C. § 482(a)(1), or have invoked unavailingly Union remedies for a period of three months, 29 U.S.C. § 482(a)(2). Second, the complainants must file a complaint with the Secretary within a

month of either full exhaustion of Union remedies or the expiration of the three-month period of futile invocation of Union remedies.[5]

### 1.

As we have noted earlier, the district court determined that the complainants had exhausted fully all Union remedies on July 26, 1991. The district court therefore concluded that the complainants were obliged to file any request for further review by the Secretary within one month of the IP's July 26, 1991 ruling. For the following reasons, we find ourselves in respectful disagreement with that conclusion. In our view, all Union remedies were not exhausted on July 26, 1991.

The district court was of the view that the charges presented by the complainants to the IP did not conform to the mandate of article XXVII, section 3 of the Union constitution:

All charges against a member or members must be presented in writing, signed by the charging party, and specify the section or sections of this Constitution, the bylaws rules or working agreement allegedly violated. The charges must state the act or acts considered to be in violation, including approximate relevant dates or places.

In the district court's view, the IVP's denial of their grievance adequately informed the complainants that the charges were subject to dismissal because they had not signed the complaint but rather had only signed a statement incorporating by reference the letter previously submitted by Attorney Elmore. Because article XXVII, section 15 requires that appeals not be recognized unless the complainants have complied with the decision from which the appeal is taken, the failure of the complainants to submit a signed charge after the decision of the IVP allowed ample justification, in the view of the district court, for the IP to render a final decision that precluded any further appeals. In reaching this decision, the district court relied heavily on its view that the purpose of the statute

---

**5.** The following subsection requires that the Secretary must bring a lawsuit within sixty days after the filing of a complaint with the Department of Labor. 29 U.S.C. § 482(b). This latter requirement is not at issue in this case and, for the sake of clarity of presentation, we shall no longer refer to it in our discussion.

was to permit unions to remedy as many election violations as possible without the government's involvement. R.16 at 2–3. Concluded the district court, "[a]lthough Complainants believe that they complied with the *spirit* of section 3 by incorporating by reference the document from Attorney Elmore to their signed statement, they did not comply with the *letter*." *Id.* at 4 (emphasis in the original).

■ We agree with the Secretary that, the district court took too narrow a view of the purpose of § 402. One of the principal purposes of the LMRDA is to "afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations." 29 U.S.C. § 401(b). This remedial legislation was necessary because Congress had discovered "from recent investigations in the labor and management fields[ ] that there [had] been a number of instances of breach of trust, corruption, disregard of individual employees, and other failures to observe high standards of responsibility and ethical conduct." *Id.* More particularly, the special function of Title IV of the LMRDA, 29 U.S.C. §§ 481–83, is to ensure "free and democratic" elections. *See Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968).[6]

As our colleague in the district court observed, this legislation manifested Congress' "concern for the need to remedy abuses in union elections without departing needlessly from the longstanding congressional policy against unnecessary governmental interference with internal union affairs." *Hodgson v. Local Union 6799, United Steelworkers*, 403 U.S. 333, 338, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971); *see also Glass Bottle Blowers Ass'n*, 389 U.S. at 471, 88 S.Ct. at 648. "[A]t the same time, however, unions were expected to provide responsible and responsive procedures for investigating and redressing members' election grievances." *Wirtz v. Local Union No. 125, Laborers' Int'l Union*, 389 U.S. 477, 484, 88 S.Ct. 639, 642,

19 L.Ed.2d 716 (1968). The Supreme Court in *Hodgson* noted that

> any interpretation of the exhaustion requirement must reflect the needs of rank and file union members—those people the requirement is designed ultimately to serve. We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question.

403 U.S. at 340–41, 91 S.Ct. at 1846. The Supreme Court also noted: "members should not be held to procedural niceties while seeking redress within their union, and exhaustion is not required when internal union remedies are unnecessarily complex or otherwise operate to confuse or inhibit union protestors." *Id.* at 341 n. 6, 91 S.Ct. at 1846 n. 6.

We believe that the district court failed to accord sufficient weight to the manifest intent of Congress to balance its preference for internal union dispute resolution machinery with its concern that union members have an expeditious and certain method by which they can be assured that democratic principles will be vindicated in union elections. It is clear that Congress meant "to harmonize the need to eliminate election abuses with a desire to avoid unnecessary governmental intervention." *Id.* at 339, 91 S.Ct. at 1845.

■ The IP's claim that the complainants had forfeited their right to further appeals cannot be supported by article XXVII, section 15, of the Union constitution, which provides that appeals will not be "recognized" if the appellants do not comply with the decision from which an appeal is taken. The IVP's decision did not contain any mandate

**6.** Quoting S.Rep. No. 187, 86th Cong., 1st Sess. 20 (1959), U.S.Code Cong. & Admin.News 1959, p. 2318.

by which the complainants were obliged to abide. Thus, it was disingenuous for the IP to state that the right to further appeals had been forfeited by inaction. In dismissing the complainants' protest, the IP took advantage of the complainants' confusion concerning the IVP's cryptic assertion that the charge was defective. Indeed, nothing in the Union constitution supported the IP's claim that the charge was defective.

Even after the IP's July 26, 1991 ruling, the complainants could have prevailed on an appeal to the IEC or thereafter to the IC. Given that no provision in the Union constitution barred incorporation by reference, the IEC could have determined that the IVP and IP erred in finding that the original charge did not comply with section 3. Had the IEC disagreed with the IVP's and IP's prior decisions, the IP's declaration that the complainants had forfeited further appeal rights by not filing a satisfactory charge would have been a nullity. Furthermore, the IP's ruling did not state explicitly that it was the Union's final decision on the protest. The IP's decision therefore was not a final decision arrived at after full exhaustion of Union remedies.

The district court's holding that the complainants' mere compliance with the "spirit," but not the "letter," of section 3 resulted in an inadequate charge precluding further Union appeals fails to take into consideration the entire purpose of § 402. The court's assumption that section 3 contained an implicit bar against incorporating documents into a charge by reference imposed a heavy burden on the complainants rather than the Union. As the Supreme Court noted in *Local Union No. 125*, "[u]nions are expected to provide responsible and responsive procedures for ... redressing members' election grievances." 389 U.S. at 484, 88 S.Ct. at 642. The IVP's inexplicable dismissal of the complainants' charge, although prefaced by the IVP's concession that he was considering all documents that had been filed relating to the charge, is both internally inconsistent and contrary to the Supreme Court's mandate in *Hodgson* that Union members' protests must be liberally construed.

The district court erroneously concluded that the IP's July 26, 1991, letter was an unappealable final decision.

2.

■ Because the district court believed that all remedies under the Union constitution had been exhausted fully when the IP issued his denial on July 26, 1991, the court focused exclusively on § 402(a)(1) as governing the rights of the complainants to further review in the district court. As we have noted in the preceding section, we find ourselves in respectful disagreement with the district court as to the premise of its analysis: we do not view the IP's decision as a final one. In our view, therefore, the claimants had thirty days from the IP's decision to take a further appeal to the IEC. Such an appeal, if it had been taken, would have been due by August 26, 1991. During that period, on August 13, 1991, the three-month statutory period of § 402(a)(2) expired and, by the plain wording of the statute, the complainants were then able, as an alternate to further invocation of the internal remedies afforded by the Union, to file a complaint with the Secretary. If they elected this latter route, they were obliged, by the plain wording of the statute, to file within thirty days of the expiration of the three-month statutory period. The complaint to the Secretary was therefore due on or before September 13, 1991.

Rather than continuing to seek redress within the Union, the complainants elected to file a complaint with the Secretary. They filed that complaint on September 6, 1991. This date, while clearly within thirty days of the running of the three-month statutory period, fell after the deadline for filing an appeal with the IEC. We do not believe, however, that the complainants were obliged to file an appeal with the IEC within the designated time period in order to preserve their right to seek a remedy before the Secretary. Like our colleagues in the Sixth Circuit, we believe that we adhere more faithfully to the congressional intent by holding that, once the three-month statutory period expired, the complainants had the option to proceed under the provisions of § 402(a)(2) and its time

provisions, without regard to the time strictures contained in § 402(a)(1). The complainants in *Martin v. Local 480, International Brothers of Teamsters*, 946 F.2d 457 (6th Cir.1991), similarly had filed a complaint with the Secretary within one month of the expiration of the three-month period established by § 402(a)(2). The complainants had received an appealable nonfinal decision concerning their protest prior to the expiration of the three-month period set forth in § 402(a)(2). The complainants filed an untimely appeal of the decision with the Union and thereafter also filed a complaint with the Secretary. The Union refused to consider the untimely appeal and successfully argued before the district court that the complainants should be barred from invoking § 402(a)(2) because they had not invoked all available remedies within the three-month period. In reversing the district court, the Sixth Circuit held that complainants "are not required to exhaust fully their internal remedies if those remedies have been invoked without satisfaction for a period of three months." *Martin*, 946 F.2d at 462. The court stated that § 402(a)(2)'s three-month invocation of remedies requirement is satisfied so long as complainants do all that they are required to do under Union rules for invoking internal remedies and meet all deadlines under those rules during the statutory three months. *Id.*

In reaching this conclusion, the Sixth Circuit noted that any other result would read out of § 402 the alternative to exhaustion of internal union remedies that it clearly provides. *Id.* The court noted that the purpose of the LMRDA's exhaustion requirement is to *balance* the public interest in fair and democratic union elections and the importance of minimizing governmental encroachment upon Union autonomy. *Id.* at 461 (quoting *Donovan v. Local 3122, Communications Workers of Am.*, 740 F.2d 860, 861 (11th Cir.1984) (quoting *Brennan v. Local Union 122, Amalgamated Clothing*, 564 F.2d 657, 660 (3d Cir.1977))). The court further explained that:

> "The two alternative provisions of § 402(a) illustrate the distinction between requirements of exhaustion and invocation of remedies. The first alternative is one of direct exhaustion of the remedies available under the union's constitution and by-laws. The second alternative, however, requires only the invocation of available remedies and authorizes resort to the Secretary of Labor, regardless of exhaustion, if the remedies invoked have not yielded a final decision within three calendar months. Both requirements are intended to afford the union an opportunity to hear the complaint of its member and to redress his grievance before he may resort to governmental intervention."

*Martin*, 946 F.2d at 461 (quoting *Shultz v. Local 1291, Int'l Longshoremen's Ass'n*, 429 F.2d 592, 595–96 (3d Cir.1970)).

As the Sixth Circuit concluded in *Martin*, the Union, and not the complainants, has the responsibility under the statute for the passing of the three-month statutory period without the rendition of a final opinion. "The complainants had no responsibility for the time requirements that the union itself ha[s] created." *Martin*, 946 F.2d at 462. Thus, as the Third Circuit has written, the Union "cannot rely upon its own stately procedure for appeal or its own delay in deciding various stages of appeal to destroy the right of a member to resort to the Secretary of Labor under the alternate provision of subsection (2)." *Shultz*, 429 F.2d at 597.

Accordingly, we conclude that the complainants had until August 26, 1991, to file an appeal of the IP's ruling with the IEC. The § 402(a)(2) three-month invocation of remedies requirement expired on August 13, 1991, and the complainants had met all deadlines under Union rules up to that date. That the complainants thereafter decided to seek recourse to the Secretary within one month rather than to file a further appeal with the Union by August 26, 1991, is a permissible alternative under § 402(a)(2).

### Conclusion

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

REVERSED AND REMANDED.