**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALEXIS M. HERMAN, Secretary of
Labor, United States Department of
Labor,
Plaintiff-Appellant,

No. 99-1684

v.

LOCAL 305, NATIONAL POST OFFICE
MAIL HANDLERS, LIUNA, AFL-CIO,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-98-608)

Argued: April 4, 2000

Decided: May 23, 2000

Before HAMILTON, Senior Circuit Judge,
John C. GODBOLD, Senior Circuit Judge of the
United States Court of Appeals for the Eleventh Circuit,
sitting by designation, and David A. FABER,
United States District Judge for the Southern District of
West Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Senior Judge Hamilton
wrote the opinion, in which Senior Judge Godbold and Judge Faber
joined.

_____

**COUNSEL**

**ARGUED:** Douglas Harry Hallward-Driemeier, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Thamer Eugene Temple, III, MCSWEENEY, BURTCH & CRUMP, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney General, Helen F. Fahey, United States Attorney, Barbara C. Biddle, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

_____

**OPINION**

HAMILTON, Senior Circuit Judge:

The Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401-531, authorizes the Secretary of Labor (the Secretary) to initiate lawsuits in federal district court challenging union elections that violate the terms of the LMRDA. See id. § 482(b). However, before the Secretary may bring an action under the LMRDA, a union member first must file a timely administrative complaint with the Secretary. See id. § 482(a). Under the LMRDA, a union member may file an administrative complaint with the Secretary within one calendar month of when either (1) the union member "has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body," or (2) the union member has "invoked such available remedies without obtaining a final decision within three calendar months after their invocation." Id. § 482(a), (a)(1), (a)(2).

In this case, the Secretary brought this action against Local 305 of the National Postal Mail Handlers Union (the Union) alleging, inter alia, that the Union had used membership dues to promote its incumbent president's candidacy through its newsletter in violation of the LMRDA. In response to the Secretary's complaint, the Union moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), that portion of the Secretary's complaint challenging the Union's election for president.**1** In granting the Union's motion to dismiss, the district

_____

**1** In her complaint, the Secretary challenged three other elections conducted by the Union: (1) the election for state executive board member-

2

court held that the union member's administrative complaint, which formed the basis of that portion of the Secretary's complaint challenging the Union's election for president, was not timely filed. On this basis, the district court concluded that it lacked subject matter jurisdiction over that portion of the Secretary's complaint challenging the Union's election for president. For the reasons stated below, we conclude that the union member's administrative complaint, which formed the basis of that portion of the Secretary's complaint challenging the Union's election for president, was timely filed and, therefore, the district court had subject matter jurisdiction over that portion of the Secretary's complaint. Accordingly, we vacate the district court's judgment and remand the case to the district court with instructions to consider on the merits the Secretary's claims as they relate to the Union's presidential election.

I

On January 17, 1998, the Union held its regularly scheduled triennial election of officers. The election results were certified on January 30, 1998, and those results were posted for the general membership of the Union during the first week of February 1998. Ronald Jones (Jones) won the election for president by a margin of more than two to one over the next closest candidate, Renee Holiday (Holiday).

On February 16, 1998, Holiday filed a timely protest with the National Postal Mail Handlers Union's national president (National President).**2** In her protest, Holiday alleged, among other things, that Jones had used union funds for campaigning, including sending a

_____

Maryland; (2) the election for administrative vice president-Baltimore, Maryland; and (3) the election for administrative vice president-Washington, D.C. With respect to these three elections, in its motion to dismiss, the Union conceded that new elections for those offices should be conducted under the supervision of the Secretary. Accordingly, the only election at issue before this court is the Union's election for president.

**2** Under section 6(1) of the Union's constitution, protests regarding the conduct of an election must be filed with the National President within fifteen days of the posting of the election results.

3

campaign magazine in the guise of a union newsletter. On May 13, 1998, the National President issued a letter denying Holiday's protest, and Holiday received that letter the following day.

Under the Union's constitution, Holiday had fifteen days from the date of her receipt of the National President's decision to appeal that decision to the National Postal Mail Handlers Union's national executive board (National Executive Board). Holiday did not appeal the National President's decision to the National Executive Board. Instead, on June 14, 1998, she filed an administrative complaint with the Secretary.

After investigating Holiday's administrative complaint, the Secretary filed this action in the United States District Court for the Eastern District of Virginia. As noted earlier, the Secretary's complaint challenged four of the elections held on January 17, 1998.**3**

On December 17, 1998, the Union moved to dismiss that portion of the Secretary's complaint challenging the Union's election for president. In its motion, the Union argued that Holiday's administrative complaint was not timely filed with the Secretary, and, therefore, the district court lacked subject matter jurisdiction over the Secretary's challenge to the Union's election for president. On April 8, 1999, the district court granted the motion, and the Secretary noted a timely appeal.

II

On appeal, the Secretary challenges the district court's determination that it lacked subject matter jurisdiction over the Secretary's challenge to the Union's election for president. In this case, the Secretary carries the burden of proving subject matter jurisdiction. See Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). We review de novo the district court's determination that it lacked subject matter jurisdiction. See id.

Under the LMRDA, the Secretary is authorized to initiate lawsuits

_____

**3** **See ante** at 2 n.1.

4

in federal district court challenging union elections that violate the terms of the LMRDA. See 29 U.S.C. § 482(b). However, before the Secretary can bring a lawsuit challenging a union election, a union member first must file a timely administrative complaint with the Secretary. See id. § 482(a). Section 482(a) of the LMRDA provides in relevant part:

> (a) <u>Filing of complaint; presumption of validity of challenged election.</u>
>
>   A member of a labor organization--
>
>    (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
>
>    (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
>
>    may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of § 481 of this title . . . .

<u>Id.</u> § 482(a).

Courts have recognized that § 482(a) establishes two procedural requirements that must be met before the Secretary may file a complaint in federal district court challenging a union election. <u>See, e.g.</u>, <u>Reich v. Local 399, IBEW</u>, 3 F.3d 184, 188 (7th Cir. 1993); <u>Schultz v. Local 1291, Int'l Longshoreman's Ass'n</u>, 429 F.2d 592, 595 (3d Cir. 1970). First, the union member must have either (1) fully exhausted all remedies available under the union's constitution and bylaws, <u>see</u> 29 U.S.C. § 482(a)(1), or (2) invoked the remedies provided by the union's constitution and bylaws for a period of three months and not obtained a final decision, <u>see id.</u> § 482(a)(2). Second, the union member must file an administrative complaint with the Secretary within one month of either full exhaustion of the union's remedies or the expiration of the three-month period of futile invocation of union remedies. <u>See Local 399</u>, 3 F.3d at 188.

5

As noted above, the district court held that Holiday's administrative complaint was not timely filed with the Secretary and, therefore, the district court lacked subject matter jurisdiction over that portion of the Secretary's complaint challenging the Union's election for president. In reaching this holding, the district court first found, as both parties had agreed, that § 482(a)(1) was inapplicable because Holiday had not exhausted her administrative remedies, including appeals, available under the Union's constitution. The district court next concluded that § 482(a)(2) was inapplicable because Holiday had obtained a final decision within three months of invoking her administrative remedies. According to the district court, the National President's May 13, 1998 decision was a final decision even though Holiday enjoyed the right to appeal that decision. Notwithstanding its holding that § 482(a)(2) was inapplicable, the district court went on to conclude that Holiday could have filed a timely administrative complaint under § 482(a)(2) if she had done so within one month of the National President's May 13, 1998 decision. However, because Holiday filed her administrative complaint on June 14, 1998, more than one month after the date of the National President's decision, the district court concluded that her administrative complaint was not timely filed. In reaching this latter conclusion, the district court opined that the date of the National President's decision and not the date that Holiday received that decision was the date that triggered § 482(a)'s one-month period.

It is clear that Holiday did not exhaust all of her union remedies as required under § 482(a)(1). The full process of appeal would have taken her to the National Executive Board and to the Laborer's International Union of North America. Therefore, the question presented in this case is whether Holiday invoked the Union's available remedies without obtaining a final decision within three months and, thus, fell within the confines of § 482(a)(2).

The parties correctly agree that § 482(a)(2)'s three-month period began on February 16, 1998 when Holiday filed her protest with the National President and ended three months later on May 16, 1998. The parties' principal disagreement centers on whether the district court correctly concluded that the National President's May 13, 1998 decision was a "final decision." If the National President's decision was a final decision, then, by its terms, § 482(a)(2) was unavailable

6

to Holiday. However, if the National President's May 13, 1998 decision was not a final decision, then § 482(a)(2) was available to Holiday because on May 16, 1998, the date on which the thirty-day period ended, she was still invoking her union remedies, i.e., she had union remedies available that were unexhausted.

To determine what constitutes a final decision under§ 482(a)(2), we must first examine the relevant statutory language chosen by Congress to express its intentions. See Holloway v. United States, 119 S. Ct. 966, 969 (1999). If the intent of Congress is clear, then our analysis proceeds no further, for we "must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).

Because there are several plausible meanings for the term "final decision," we believe the term is ambiguous. A decision may be considered a final decision when a union representative, such as the National President in this case, renders his decision. See BLACK'S LAW DICTIONARY 847 (7th ed. 1999) (defining a final decision or judgment as a "court's last action that settles the rights of the parties and disposes of all issues in controversy, except the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment"). This is the definition chosen by the district court. Alternatively, in the context of a union that has one or multiple layers of appellate review, a decision could be considered a final decision when the union's highest appellate tribunal issues its decision, or, in the absence of such, a decision could be considered a final decision when any period for appeal established by the union's constitution or bylaws expires.

Because the term "final decision" is ambiguous, we must determine what level of deference we should afford the Secretary's interpretation of the term "final decision." "The law is well settled that an agency's interpretation of a statute with which it has been charged with administering and which has been reduced to a regulation is to be fully accepted by a court as long as Congress has not directly spoken as to the precise question at issue and the interpretation proffered by the agency is a permissible one." Jones, 192 F.3d at 427. Here, in accordance with its statutory duty to administer those provisions of the LMRDA pertaining to the enforcement of § 481, see 29 U.S.C. § 482(b), the Secretary has promulgated interpretive regulations con-

7

cerning § 481's enforcement. See 29 C.F.R. §§ 452.135-452.136. The Secretary's proffered interpretation of the term "final decision" as found in § 482(a)(2) has been reduced to a regulation, see id. § 452.135, and Congress has not directly spoken on what constitutes a "final decision." Therefore, if the Secretary's proffered interpretation is a permissible one, we must enforce the Secretary's interpretation. See id.

The Secretary's interpretation of § 482(a) is contained in 29 C.F.R. § 452.135. That section of the Code of Federal Regulations states:

> (a) Any member of a labor organization may file a complaint with the Office of Labor-Management Standards alleging that there have been violations of requirements of the Act concerning the election of officers, delegates, and representatives (including violations of election provisions of the organization's constitution and bylaws that are not inconsistent with the Act.). The complaint may not be filed until one of the two following conditions has been met: (1) The member must have exhausted the remedies available to him under the constitution and bylaws of the organization and its parent body, or (2) he must have invoked such remedies without obtaining a final decision within three calendar months after invoking them.

> (b) If the member obtains an unfavorable final decision within three calendar months after invoking his available remedies, he must file his complaint within one calendar month after obtaining the decision. If he has not obtained a final decision within three calendar months, he has the option of filing his complaint or of waiting until he has exhausted the available remedies within the organization. In the latter case, if the final decision is ultimately unfavorable, he will have one month in which to file his complaint.

29 C.F.R. § 452.135.

8

Under the Secretary's regulation, before a union member may file an administrative complaint with the Secretary, the union member must exhaust her union remedies by obtaining a final decision by the union's highest tribunal and, thereafter, file within one month of that decision. Alternatively, if the union member has not obtained a final decision by the union's highest tribunal within three months of invoking her union remedies, she can file with the Secretary within one month after the three-month period expires. Thus, under the Secretary's interpretation, a union member who has diligently pursued available union remedies will necessarily have satisfied § 482(a)(1) or § 482(a)(2) no later than three months after invoking the union's remedial procedures; if the requirements of § 482(a)(1) are not met at the end of the three-month period, i.e., the union's highest tribunal, through no fault of the union member, has not rendered a decision, then the requirements of § 482(a)(2) will have been met and vice-versa.[4]

We have no trouble concluding that the Secretary's interpretation of the operation of § 482(a) is a permissible one. As noted above, in the context of a union that has one or multiple layers of appellate review, the term "final decision" plausibly can be construed to mean a decision rendered by the union's highest appellate tribunal. This is the interpretation chosen by the Secretary. We note that the Secretary's interpretation fully comports with the manifest purpose of § 482(a) which is "to postpone governmental intervention until the union is afforded the opportunity to redress the[LMRDA] violation." Wirtz v. Local 153, Glass Bottle Blowers, Ass'n , 389 U.S. 463, 472 (1968). Under the Secretary's interpretation, a union is given the latitude to establish its own appellate review process, but must ensure that this review process is completed in three months. In our view, the Secretary's interpretation furthers the Congressional goal of protect-

_____

[4] At oral argument, the Secretary acknowledged that if a union member fails to appeal a decision in the union review process, and the time for appeal expires before the three-month period of§ 482(a)(2) expires, the union member cannot file with the Secretary. Under these circumstances, § 482(a)(1) obviously is unavailable because the union member did not exhaust her available remedies under the union's constitution. Section 482(a)(2) likewise is unavailable because the union member has not "invoked such available remedies" under the constitution and bylaws of the union.

9

ing union independence, while, at the same time, ensuring that election challenges are decided promptly. See S. Rep. No. 86- 187 (1969), reprinted in 1959 U.S.C.C.A.N. 2318, 2337 (stating that § 482(a) "preserves a maximum amount of independence and self-government by giving every international union the opportunity to correct improper elections. . . . Since time is of the essence, no complaint may be entertained which is filed more than 1 month after the union has denied a remedy or the 3-month period has expired"). The Secretary's interpretation also avoids the result, surely not intended by Congress, of requiring a union member to continue to exhaust available remedies by filing a notice of appeal after the three-month period has expired.

The reasonableness of the Secretary's interpretation of the application of § 482(a) becomes all the more apparent when one examines the illogic of the district court's interpretation. First, under the district court's construction of the operation of § 482(a), the one month filing deadline under § 482(a) was triggered on May 13, 1998 when the National President's decision was issued. However, the alternative statutory triggering events for the one month filing deadline are exhaustion, see 29 U.S.C. § 482(a)(1), which all parties (and the district court) agree did not occur, or the absence of a final decision at the end of the three month-period. See id. § 482(a)(2) ("[A union member] who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation . . . ." (emphasis added)). Thus, the district court's construction of the operation of § 482(a) is incongruous with the plain language of § 482(a), as it allows § 482(a)'s one month filing deadline to be triggered where the union member has not exhausted her union remedies, but has obtained a decision from the union's initial decision maker within the three-month period.

Second, the district court's holding that a union member must file an administrative complaint with the Secretary within one month of obtaining the decision of the union's initial decision maker, in fact, subverts union independence because it permits a union member to file an administrative complaint with the Secretary without pursuing further union remedies for the remainder of the three-month period. For example, if the National President's decision had been issued on March 1, 1998, under the district court's construction, Holiday could

10

have filed an administrative complaint with the Secretary under § 482(a)(2) any time between March 1 and April 1, 1998, rather than pursuing further union remedies through the end of the three-month period on May 16, 1998. This construction is blatantly at odds with Congress' express intent that a union member invoke the remedies of, not only the union member's local union, but also of its "parent body." Id. § 482(a)(2).

Finally, under the district court's interpretation of the operation of § 482(a), the only time § 482(a)(2)'s three-month period is implicated is when the union's initial decision maker does not issue a decision within the three-month period. In any other case, a union member could file an administrative complaint with the Secretary only when, if ever, all of the union's internal appeals were concluded. Surely, Congress did not intend to allow unions to have the ability to postpone government intervention indefinitely.

Our inquiry need not proceed further. However, several cases interpreting § 482(a) are further instructive and consistent with the Secretary's interpretation of § 482(a) that a union member is not required to continue to exhaust available union remedies by filing a notice of appeal after the three-month period expires. In Martin v. Local 480, Int'l Bhd. of Teamsters, 946 F.2d 457 (6th Cir. 1993), two unsuccessful candidates for union office timely protested the union's elections on November 8, 1989, thus triggering the three-month period that expired on February 8, 1990. See id. at 459. On February 6, 1990, the protest was denied by the union's joint council, and, under the union's constitution, the unsuccessful candidates had fifteen days (or until February 21, 1990) to appeal the denial to the union's general executive board. See id. The unsuccessful candidates filed an appeal seventeen days later with the union's general executive board. See id. at 459-60. On February 28, and March 1, 1990, respectively, each unsuccessful candidate filed an administrative complaint with the Secretary. See id. at 460. On March 8, 1990, the union's general executive board denied the appeal because it was untimely. See id.

In Local 480, the Sixth Circuit concluded that the unsuccessful candidates were not required to exhaust available union remedies and, instead, could file an administrative complaint with the Secretary

11

under § 482(a)(2). See id. at 461-63. In reaching this conclusion, the Local 480 court observed that

> the union was afforded the opportunity intended by the Act to hear and redress the complaining members' charges, but it failed to render a final decision within three months after the complainants initially invoked the union's internal grievance procedures. Consequently, the union members' complaints, filed with the Secretary within one month after the three-month deadline passed, complied with the prerequisites of section [482(a)(2)]. . . .

> When the three-month period lapsed, the complainants had done all that they were required to do under the union rules for invoking internal remedies and had failed to meet no deadline under those rules. Consequently, under the Act, they had the right to complain to the Secretary of Labor when the process they invoked had not run its course at the expiration of three calendar months.

Id. at 461-62.

The court in Local 399 reached a similar result to that reached by the court in Local 480. In Local 399, union members filed a formal protest of an upcoming election with the international vice-president of the union on May, 13, 1991, thus triggering the three-month period that expired on August 13, 1991. See 3 F.3d at 185. On May 20, 1991, the international vice-president denied the protest. Following the June 10, 1991 election, the union members appealed the international vice-president's denial to the union's international president. On July 26, 1991, the international president denied the appeal. Under the union's constitution, the union members had until August 26, 1991 to appeal the international president's decision to the union's international executive council. Instead of filing an appeal, the union members filed an administrative complaint with the Secretary on September 6, 1991. See id. at 185-87.

Relying heavily on the Sixth Circuit's decision in Local 480, the Seventh Circuit held in Local 399 that the union members were not required to file an appeal with the international executive council to

12

preserve their right to file an administrative complaint with the Secretary. See id. at 190-91. According to the court, § 482(a)(2)'s invocation of remedies requirement is satisfied if the union member does all that he is required to do under the union's rules for invoking union remedies and meets all of those deadlines during the three-month period. See id. at 191. Because the union members had met all deadlines under the union's rules on the date the three-month period expired (August 13, 1991), the union members did not have to file an appeal by August 26, 1991 and could file a timely administrative complaint with the Secretary up until September 13, 1991, which they did. See id.

Like the union members in both Local 480 and Local 399, Holiday met all deadlines on the date the three-month period expired, May 16, 1998. She, therefore, had until June 16, 1998 to file an administrative complaint with the Secretary. Because she filed her administrative complaint with the Secretary on June 14, 1998, her administrative complaint was timely filed. Because her administrative complaint was timely filed, the district court had subject matter jurisdiction over that portion of the Secretary's complaint challenging the Union's election for president.

III

For the reasons stated herein, the judgment of the district court is vacated and the case is remanded to the district court with instructions to consider on the merits the Secretary's claims as they relate to the Union's presidential election.

VACATED AND REMANDED