

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2007

# In Re: Bristol Myers

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2964

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Bristol Myers " (2007). *2007 Decisions*. Paper 688.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/688

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2964

———

IN RE: BRISTOL-MYERS SQUIBB SECURITIES LITIGATION

RITA CARFAGNA, as the Managing Member
of Cascia II, LLC,

Appellant.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 00-CV-01990)
District Court Judge: The Honorable Stanley R. Chesler

———

Argued June 27, 2007
Before: BARRY, FUENTES, and JORDAN, <u>Circuit Judges</u>.

(Filed:   July 27, 2007)

———

Edward F. Siegel (ARGUED)
27600 Chagrin Boulevard, Suite 340
Cleveland, OH 44122
*Attorney for Appellant*

Thomas A. Dubbs
James W. Johnson (ARGUED)
Labaton Sucharow & Rudoff LLP
100 Park Avenue, 12th Floor
New York, NY 10017
Allyn Z. Lite
Lite De Palma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102

*Attorneys for Amalgamated Bank NY*

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge.

After a $185 million settlement in this securities class action, lead counsel requested $36.6 million in attorneys' fees. The District Court approved the request despite the objections of class member Rita Carfagna, who now appeals. For the reasons that follow, we will affirm.

## I.

In July 2000, a number of class action suits against Bristol-Myers Squibb were consolidated. Amalgamated Bank, as trustee of LongView Collective Investment Fund, was named the lead plaintiff, and Labaton Sucharow & Rudoff LLP was named lead counsel. In an August 2000 consolidated complaint, plaintiffs alleged that Bristol-Myers and its senior officers made knowingly false statements about the safety and sales prospects of a new drug, ultimately leading to a significant drop in the price of Bristol-Myers's shares. An amended complaint in May 2002 made similar claims about Bristol-Myers's statements and omissions regarding two subsequent clinical trials of the drug.[1]

In June 2003, lead counsel signed an attorneys' fee arrangement with lead plaintiff.

---

[1] Plaintiffs also filed a second amended complaint in August 2005, which simply conformed the allegations to the District Court's partial grant of summary judgment.

2

It provided that lead counsel would receive a certain percentage of any class award depending on the stage at which settlement or judgment occurred and the amount of the award. In February 2006, the parties reached a settlement, pursuant to which Bristol-Myers would pay the class $185 million and enact significant corporate governance reform. Following its approval of the settlement, lead plaintiff granted lead counsel's request to set aside the original fee arrangement and instead seek up to 20% of the settlement fund from the District Court. A settlement notice was then mailed to the class; it indicated that lead counsel would seek fees of up to 20% of the fund, but it did not disclose the original fee agreement.

Lead counsel then asked the District Court to approve fees of $36.6 million (19.77% of the fund), which represented the lodestar.[2] This was $14.7 million more than counsel would have received under the original fee arrangement. At a hearing before the District Court, class member Rita Carfagna objected to the fees on several grounds. The Court, however, approved the fee request after concluding that counsel had "earned every penny that they've sought." App. 1188.

We have jurisdiction in this case under 28 U.S.C. § 1291. We review the District Court's approval of fees for abuse of discretion. Gunter v. Ridgewood Energy Corp., 223

---

[2] "Lodestar" is defined as "[a] reasonable amount of attorney's fees in a given case, usu. calculated by multiplying a reasonable number of hours worked by the prevailing hourly rate in the community for similar work, and often considering such additional factors as the degree of skill and difficulty involved in the case, the degree of its urgency, its novelty, and the like." Black's Law Dictionary 960 (8th ed. 2004).

F.3d 190, 195-96 (3d Cir. 2000).

## II.

## A.

This is a common fund case, in which the attorneys' fees and class award come from the same source. In other words, "every additional dollar given to class counsel means one less dollar for the class, regardless how a total settlement package is formally structured." In re Cendant Corp. Litig., 264 F.3d 201, 256 (3d Cir. 2001). Among the factors that district courts should consider when deciding whether to approve attorneys' fees in a common fund case are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter, 223 F.3d at 195 n.1.

Carfagna argues that lead counsel should have been bound by its original agreement with lead plaintiff. She notes that lead counsel is very experienced and that it entered into the original fee arrangement almost three years after the litigation began. Carfagna, however, has failed to explain why the District Court's approval of $36.6 million in attorneys' fees was an abuse of discretion. In fact, the Court carefully reviewed all the relevant factors and specifically considered the existence of the previous fee arrangement. The Court observed that counsel took on "extraordinarily substantial

4

risks"; the settlement fund was "very large" for the type of securities fraud claimed; counsel was skilled and efficient; the litigation was long and complex, requiring an "extraordinary" devotion of time; the attorneys' fee award, as a percentage of the settlement fund, was on the "low end" as compared to similar cases; and it would be bad policy to award less than the lodestar when counsel performed so well. App. 1188-94. In light of these considerations, as well as lead plaintiff's approval of the fee request, we cannot say the District Court abused its discretion.[3]

## B.

Under Federal Rule of Civil Procedure 23(e)(1)(B), district courts "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." We have explained that "Rule 23(e) notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." In re Prudential Ins. Co., 148 F.3d 283, 327 (3d Cir. 1998). Without citing to any case law, Carfagna argues that the failure to disclose the original fee arrangement in the settlement notice was a material omission rendering the notice inadequate. She also contends that more class members would have objected had they known of the original

---

[3] Carfagna also argues that lead plaintiff's attorneys failed to provide sufficiently detailed summaries of their work on the case. She does not, however, make any specific allegations that the attorneys inflated their hours. And although she cites the billing summary of Martis Alex, which does contain only minimal information, she fails to note that he also submitted a separate affidavit detailing his firm's work on the case. See App. 798-801.

fee arrangement.

We believe that it would have been preferable for lead counsel to disclose the original fee arrangement in the notice. Nevertheless, the notice properly summarized the litigation and settlement, and it indicated that counsel would be seeking fees of up to 20% of the settlement fund. The notice, therefore, was directed "in a reasonable manner" and provided class members with sufficient information.

Carfagna also claims the settlement notice was misleading with respect to the percentage of fees and expenses that would be requested. One sentence of the notice states that lead counsel "intends to apply for an award for fees and expenses not to exceed 20% of the Settlement Fund." App. 514 ¶ 54. In fact, as Carfagna notes, lead counsel sought $36.6 million in fees and $3.6 million in expenses, which together constitute 21.7% of the settlement fund. Lead counsel concedes that the inclusion of the word "expenses" was an unfortunate error, but it notes that two other paragraphs of the notice state clearly that expenses will be in addition to the 20% in fees. See App. 505 ¶ 4; App. 508 ¶ 19. We believe that class members who read the full notice understood that lead counsel would seek reimbursement for expenses in addition to the 20% in fees. Certainly, it was not an abuse of discretion for the District Court to approve the fee request despite this one mistake in the notice.

### III.

For the reasons stated above, we will affirm the District Court's decision to approve lead counsel's request for $36.6 million in attorneys' fees.

6