NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

————————————

**ANGEL L. ARCENEAUX,**
*Petitioner*

**v.**

**INTERNAL REVENUE SERVICE,**
*Respondent*

————————————

2019-2366

————————————

Petition for review of an arbitrator's decision by Samuel Vitaro.

————————————

Decided:  July 29, 2021

————————————

KATHRYN W. BAILEY, Office of General Counsel, National Treasury Employees Union, Washington, DC, for petitioner.  Also represented by GREGORY O'DUDEN.

ANDREW JAMES HUNTER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JEFFREY B. CLARK, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

————————————

Before NEWMAN, LOURIE, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

HUGHES, *Circuit Judge*.

Angel Arceneaux invoked an arbitration clause in her collective bargaining agreement after she was removed from her job at the IRS. The arbitrator dismissed that invocation as untimely. Because we agree with the arbitrator that Ms. Arceneaux's invocation of arbitration was untimely, we affirm.

I

Ms. Arceneaux was employed by the IRS starting in 2005. After a number of gaps in employment due to her resignation from various roles within the IRS, she was hired as a Tax Examiner on February 22, 2016, and then in October 2016 she was moved to the role of customer service representative.

On February 16, 2017, the IRS notified Ms. Arceneaux that a recommendation had been made for her removal due to excessive absences but that she could avoid removal by a voluntary resignation. J.A. 2. The next day, Ms. Arceneaux responded with a letter agreeing to resign, but stated in the letter that she was being "forced to resign." *Id.* Rather than accept this resignation under protest, the IRS terminated her employment and notified Ms. Arceneaux in a letter dated February 17, 2017. The letter stated in relevant part:

Dear Ms. Arceneaux:

This is a notice of my decision to terminate your employment with the Internal Revenue Service, effective Friday February 17, 2017, in accordance with Part 315.804 of the Office of Personnel Management (OPM) regulations.

J.A. 30. The letter continued by describing reasons for Ms. Arceneaux's termination and certain appeal rights. J.A. 30–31. The letter also noted that Ms. Arceneaux was still in her probationary period at the time of termination. J.A. 30.

Under its 2016 National Agreement with the IRS (the Agreement), the National Treasury Employees' Union (NTEU) secured certain rights for IRS employees who completed their probationary period. As such, if Ms. Arceneaux had tenure, she would have had various rights, including the right to 30 days' notice of a proposed adverse action, the right to file a reply, and the right to invoke arbitration. The Agreement provides that: "The Union must invoke arbitration within thirty (30) days of the date the employee receives the final decision issued by the Employer." Agreement, Art. 39, § 6(B).

On March 10, 2017, a Union representative wrote the IRS:

> As the designated representative of your employee Angel L Arceneaux we are requesting an oral reply/written reply to the removal dated February 17, 2017 and received February 23, 2017. I am also requesting the related evidentiary file.

J.A. 37. On March 13, 2017, the IRS responded to the representative as follows:

> Management is unable to fulfil your request for an oral reply/written reply and evidence relied upon in regard to the removal of probationary employee Angel Arceneaux, as she is not covered under the 2016 National Agreement, Article 38 and 39 for which these requests apply.
>
> The Probationary employee received a last right offer on February 16, 2017, but her reason for resigning was not acceptable to management so she was issued a probationary termination letter. In the

> termination letter it provided the probationary employee all avenues of appeal rights she can take (MSPB, EEO, FLRA, OSC, OPM) should she wish to appeal her termination.

J.A. 36–37. The Union disagreed, arguing that "the employee obtained full appeal and contractual rights before she received a termination letter so now we have due process rights issues." J.A. 36. The Union also contended that "[a]n employee may resign and state any reason they want," so the IRS should not have rejected her resignation. J.A. 36. The IRS ended this series of communications with an email on March 14, 2017:

> Stating they were forced to resign or coerced to resign is not a voluntary resignation, which is what management offered the employee. You can disagree all you want. The termination letter provided the probationary employee all avenues of appeal rights she can take. . . . This is management's position and my final reply.

J.A. 36.

On April 12, 2017, the Union invoked arbitration. The IRS objected, arguing that the invocation was untimely because the February 17, 2017 letter was the IRS's "final decision," which began the 30-day clock to invoke arbitration. The arbitrator agreed with the IRS that the invocation of arbitration was untimely and dismissed the case.[1] J.A. 5–7.

## II

We have jurisdiction to review an arbitrator's decision under a collective bargaining agreement under 5 U.S.C.

---

[1]    The arbitrator reached this question by assuming without deciding that Ms. Arceneaux had completed her probationary period. J.A. 4.

§§ 7121(f) and 7703(a). We reverse the decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Miskill v. Soc. Sec. Admin.*, 863 F.3d 1379, 1382 (Fed. Cir. 2017) (citing 5 U.S.C. §§ 7703(c)(1)–(3)). We agree that the invocation of arbitration was untimely and therefore affirm.

Under the Agreement, if the IRS takes an adverse action against a non-probationer employee, the employee has multiple options for appeal, including binding arbitration. Agreement, Art. 39, § 6(A). "The [NTEU] must invoke arbitration within thirty (30) days of the date the employee receives the final decision issued by the [IRS]." *Id.* at § 6(B).

It is undisputed that Ms. Arceneaux invoked arbitration more than 30 days after receiving the February 17, 2017 notice from the IRS informing her of her termination. Thus, the only issue here is whether that notice constituted a final decision.

Several factors indicate that the February 17, 2017 letter was a final decision. The opening words of the letter noted that it was a "decision to terminate." J.A. 30. The decision was effective as of the date of the letter, signaling finality. *Id.* The letter also outlined Ms. Arceneaux's appeal rights, language typically included in final agency personnel decisions and that would be superfluous if the letter was not a final decision. J.A. 30–31.

Ms. Arceneaux argues that the final decision was instead the IRS's email on March 14, 2017. But that email did nothing to render the February 17 decision non-final. J.A. 36. Unlike the February notice, the March email did not use the word "decision," nor did it list appeal rights or even purport to change the status of the parties. Rather than indicating that it was a new final decision, the email referenced the original termination letter and reaffirmed

its validity. The email's short statement that it was the IRS's "final reply" merely indicated the agency's desire to discuss the issue no further.

Ms. Arceneaux also argues that the IRS violated her procedural rights by removing her without enough advance notice and without giving her an opportunity to respond. Appellant's Br. at 15. But even assuming these rights were violated, we cannot reinterpret a notice that is clearly the final decision of the agency to be a notice of proposed action. The 30-day period to invoke arbitration under the Agreement began when she received the final decision of the agency, not after her subsequent communications with the IRS. Removed employees cannot undermine the finality of removal decisions by corresponding with the employer afterwards.

We hold that the IRS's termination letter on February 17, 2017 was the final decision regarding Ms. Arceneaux's removal. Her invocation of arbitration more than 30 days after the termination letter is therefore untimely under the Agreement.

### III

Because the arbitrator properly dismissed this case as untimely, we affirm.

### AFFIRMED

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**ANGEL L. ARCENEAUX,**
*Petitioner*

**v.**

**INTERNAL REVENUE SERVICE,**
*Respondent*

———————————

2019-2366

———————————

Petition for review of an arbitrator's decision by Samuel Vitaro.

———————————

NEWMAN, *Circuit Judge,* dissenting.

This appeal is from the denial of arbitration, as attempted to be invoked by Angel L. Arceneaux and her representative the National Treasury Employees Union (NTEU). The right to arbitrate an adverse employment action is established by the National Agreement between the NTEU and the Treasury ("the Agreement").

Ms. Arceneaux was terminated by the Internal Revenue Service (IRS or "Agency"), on one day's written notice. The NTEU then requested the procedures established in the Agreement; the IRS refused; and the NETU invoked arbitration in accordance with the Agreement. The arbitrator dismissed the arbitration as untimely, because it

was not invoked within 30 days of the IRS's designated "final decision.[1]" My colleagues agree. I respectfully dissent, for the IRS action did not conform to the Agreement's notice and response requirements for a final decision, and did not start the period for invoking arbitration.

## DISCUSSION

The Agreement establishes required procedures for adverse employment actions affecting Treasury employees. These procedures were not followed in terminating Ms. Arceneaux, the IRS giving as its reason that she was a probationary employee. The arbitrator stated that Ms. Arceneaux was not a probationary employee; she had been employed by the IRS since March 2005, with several periods of leave. At the hearing the arbitrator stated: "I will not be taking evidence in this threshold proceeding as to whether Angel Arceneaux was a probationer or not but for purposes of any arbitrability argument you can assume that she was not." Hearing Tr. of May 3, 2018 (Appx. 61).

The arbitrator held that the IRS termination procedure "was incorrect based on the understanding that the Grievant was not a probationary employee because it was issued as if the Grievant was, and misstated the appeal rights (i.e., not notice of a right to seek arbitration)." Arb. Dec. at 6.

### *The IRS procedure terminating Ms. Arceneaux violated the Agreement*

Ms. Arceneaux was given a letter dated February 16, 2017 stating that a "recommendation has been made" for her termination effective February 17, 2017. The February 16 letter stated that she could prevent the termination

---

[1]    *Nat'l Treasury Emps. Union, Chapter 97 v. Dep't of Treasury, Internal Revenue Serv.* (July 5, 2019) ("Arb. Dec.").

action by voluntarily resigning.  Ms. Arceneaux resigned on February 17, 2017, writing that her resignation was "not willing but by force."

By letter dated February 17, 2017, the IRS rejected her resignation and stated its "final decision" terminating her employment effective February 17, 2017.

The NTEU Agreement requires 30 days' advance notice of a proposed adverse action, and an opportunity to respond and receive findings.  The Agreement's Article 39, captioned "Adverse Actions," states the several steps of the agreed procedure; starting with the requirement for 30 days' notice of the proposed action:

> Section 2(A).  In all cases of proposed adverse action, the employee will be given written notice stating the specific reasons for the proposed action thirty (30) days in advance of the action.

Ms. Arceneaux was not given 30 days notice.  She was given one day's notice on February 16, 2017, of the proposed action effective February 17, 2017.

The Agreement requires that the employee will be given the opportunity to respond prior to a decision:

> Section 2(B).  In all cases of proposed adverse action . . . the employee will be given the opportunity . . . to respond orally and/or in writing to the reasons and specifications prior to a decision on them provided that the oral and/or written reply is received by the employer within a reasonable period of time after the employee's receipt of the letter of proposed action.

Ms. Arceneaux was given no opportunity to respond.  She was invited to resign, but her resignation was not accepted, and she was terminated effective that same day.

The Agreement also requires the Agency to set forth findings on each reason and specification for the decision:

> Section 4. An official who sustains the proposed reasons against an employee in an adverse action will set forth findings with respect to each reason and specification against the employee in the notice of decision. Such notice will also address factual disputes, if any, raised in the employee's reply by stating the reasons why each factual dispute was rejected.

This requirement also was not met. The IRS provided no findings for any reason or specification concerning the termination.

The NTEU on March 10, 2017 asked to reply to the removal of Ms. Arceneaux, writing by email as follows:

> As the designated representative of your employee Angel L Arceneaux we are requesting an oral reply/written reply to the removal dated February 17, 2017 and received on February 23, 2017. I am also requesting the related evidentiary file.

Appx35. On March 13, 2017, the IRS answered the NTEU, stating that Ms. Arceneaux is a probationary employee and is not covered by the Agreement:

> Management is unable to fulfil your request for an oral reply/written reply and evidence relied upon in regards to the removal of probationary employee Angel Arceneaux, as she is not covered under the 2016 National Agreement, Article 38 and 39 for which these requests apply.

Appx36. The NTEU replied the same day, stating that she was not a probationary employee, and that "the employee obtained full appeal and contractual rights before she received a termination letter so now we have due process rights issues." Appx36. The IRS answered on March 14, 2017 that:

> The termination letter provided the probationary employee all avenues of appeal rights she can take. This is management's position and my final reply.

Appx36.

On April 12, 2017 the NTEU invoked arbitration, as provided in Section 6 of the Agreement's Article 39:

> Section 6(A). If the Employer's final decision is to effect an adverse action against a bargaining unit employee, the employee may appeal the decision to the Merit Systems Protection Board (MSPB) in accordance with applicable law, or with the consent of the NTEU to binding arbitration.

> Section 6(B). The NTEU must invoke arbitration within thirty (30) days of the date the employee receives the final decision issued by the Employer.

The IRS moved to dismiss the arbitration, stating that the arbitration request was made after the 30-day period for invoking arbitration. The arbitrator granted the dismissal, despite holding that the IRS violated the Agreement's procedures.

### *The February 17 letter cannot be deemed a final decision*

The IRS position is that the February 17, 2017 letter was a "final decision," despite the absence of 30 days' notice, because "[t]he employment action removing Ms. Arceneaux was completed that same day." IRS Br. 6.

Ms. Arceneaux argues that finality cannot have occurred with the February 17 letter, and that finality of decision could not be earlier than the IRS's "final reply" to the NTEU's request to respond. A "final decision" is the "last action that settles the rights of the parties and disposes of all issues in controversy." *Herman v. Local 305, Nat'l Post Office Mail Handlers*, 214 F.3d 475, 479 (4th Cir. 2000).

Ms. Arceneaux argues that the IRS violation of the Agreement violated her due process rights, *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'") (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Zinerman v. Burch*, 494 U.S. 113, 126 (1990).

The arbitrator observed that the IRS procedure could "deny [Ms. Arceneaux] certain due process rights to employment," Arb. Dec. at 6. Although the IRS violated the Agreement, the arbitrator held that the February 17, 2017 letter initiated the Agreement's 30-days limit for invoking arbitration. The panel majority agrees, postulating that "even assuming these [Agreement] rights were violated, we cannot reinterpret a notice that is clearly the final decision of the agency to be a notice of proposed action." Maj. Op. at 6. However, the February 17, 2017 letter cannot be deemed a final decision under the Agreement, for the February 17 letter did not conform to the Agreement.

Ms. Arceneaux proposes that finality occurred no earlier than the Agency's denial of the NTEU's request to respond to the termination, for this was a "last action that settles the rights of the parties." *Herman v. Local 305,* 214 F.3d at 479. No stretch of due process can convert an illicit action into a "final decision" having estoppel consequences.

Nonetheless, the arbitrator held that although Ms. Arceneaux was denied the required 30 days' notice and opportunity to respond, this did not avoid accrual of the 30-day period for invocation of arbitration. That cannot be correct, for the "final decision" under Article 39 is made after the employee has been given notice and an opportunity to reply. *See Garcia v. Dep't of Homeland Sec.*, 780 F.3d

1145, 1147 (Fed. Cir. 2015) ("[W]e must interpret specific language in light of the contract as a whole."). The 30 day period to invoke arbitration could not accrue until after these events occurred. My colleagues err in denying arbitration as untimely invoked.

I respectfully dissent.